# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **CERTIFIED ROSES, INC., 502 SCENIC DRIVE, LLC**, Individually, and on Behalf of all Others Similarly Situated, | § § § § | |
| *Plaintiffs,* | § § | CASE NO. 2:21-cv-133-JRG-RSP |
| v. | § § | |
| **SYMMETRY ENERGY SOLUTIONS, LLC,** | § § | |
| *Defendant.* | § § | **JURY TRIAL DEMANDED** |

## DEFENDANT SYMMETRY ENERGY SOLUTIONS, LLC'S MOTION TO DISMISS COUNTS II-V OF PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT AND PLAINTIFFS' CLASS ACTION ALLEGATIONS

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

RELEVANT FACTS ............................................................................................................3

LEGAL STANDARDS .......................................................................................................6

ARGUMENT .......................................................................................................................7

I.     The Court Should Dismiss Counts II-V Of The Amended Complaint ..................7

     A.    Plaintiffs Do Not Allege That They Are "Consumers," And Thus Lack Standing To Bring DTPA Claims ................................................................8

     B.    Plaintiffs Fail to Satisfy The Heightened Pleading Standards Of Rule 9(b) For Their DTPA And Negligent Misrepresentation Claims ......................8

          1.    Plaintiffs Fail To State What Alleged Misrepresentations Symmetry Made ..................................................................................10

          2.    Plaintiffs Fail To State Who Made Any Alleged Misrepresentations ....................................................................................10

          3.    Plaintiffs Fail To State Where or When Any Alleged Misrepresentations Were Made ....................................................10

          4.    Plaintiffs Fail To State How Or Why Any Alleged Misrepresentations Were Misleading .............................................10

          5.    Plaintiffs Fail To State How Symmetry Allegedly Engaged In Price-Gouging ......................................................................11

     C.    The Economic Loss Rule Bars Plaintiffs' DTPA, Negligence, And Negligent Misrepresentation Claims ............................................................13

     D.    Plaintiffs Are Not Entitled To Declaratory Relief ....................................16

II.    The Court Should Dismiss Plaintiffs' Class Allegations .......................................16

     A.    Plaintiffs' Proposed Nationwide Class Definition Is Not Ascertainable ...16

     B.    Plaintiffs' Allegations Are Insufficient To Meet Any Of The Requirements Of Rule 23(b) For The Nationwide Class ...........................20

          1.    Plaintiffs Offer No Allegations To Meet The Requirements Of Rule 23(b)(1) ...................................................................................20

          2.    Plaintiffs Offer No Allegations To Meet The Requirements Of Rule 23(b)(2) ...................................................................................21

          3.    Plaintiffs' Allegations Are Insufficient To Meet The Requirements Of Rule 23(b)(3) ........................................................22

     C.    Plaintiffs' Allegations Are Insufficient To Meet The Requirements Of Rule 23(c) ...............................................................................................28

     D.    Plaintiffs' Texas Class Allegations Should Be Dismissed Because The Texas Class Definition Suffers From The Same Fatal Flaw Of Vagueness ...................................................................................................29

CONCLUSION..................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Allison v. Citgo Petroleum Corp.*,
    151 F.3d 402 (5th Cir. 1998) ...............................................21

*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ...............................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................6

*Ass'n for Accessible Meds. v. Frosh*,
    887 F.3d 664 (4th Cir. 2018) ...............................................25

*Barnett v. Forest River, Inc.*,
    2017 WL 7733052 (E.D. Tex. Nov. 29, 2017) .........................9

*Bass v. Hendrix*,
    931 F. Supp. 523 (S.D. Tex. 1996) ...............................18, 24

*Bayer CropScience LP v. Schafer*,
    385 S.W.3d 822 (Ark. 2011)..................................................26

*Beal Bank, S.S.B. v. Schleider*,
    124 S.W.3d 640 (Tex. App. 2003)..........................................26

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................6

*Berry v. Indianapolis Life Ins. Co.*,
    2010 WL 3422873 (N.D. Tex. Aug. 26, 2010)........................8

*Berry v. Indianapolis Life Ins. Co.*,
    608 F. Supp. 2d 785 (N.D. Tex. 2009) .................................12

*Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*,
    572 S.W.3d 213 (Tex. 2019)..................................................15

*Braud v. Transp. Servs. of Illinois*,
    2009 WL 2208524 (E.D. La. July 23, 2009) ........................28

*Brawley v. Bath & Body Works, LLC*,
    2019 WL 7945655 (N.D. Tex. Sept. 25, 2019).....................27

*Carlisle v. Normand*,
2017 WL 2256789 (E.D. La. May 23, 2017), *aff'd sub nom. Carlisle v. Mussal*, 774
F. App'x 905 (5th Cir. 2019) .............................................................................................7

*Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*,
624 F.3d 185 (5th Cir. 2010) ......................................................................................20, 21

*Castano v. Am. Tobacco Co.*,
84 F.3d 734 (5th Cir. 1996) ..........................................................................................7, 22

*Charles v. K-Patents., Inc.*,
2018 WL 9869532 (E.D. Tex. Aug. 10, 2018) .............................................................8, 15

*Cogan v. Triad Am. Energy*,
944 F. Supp. 1325 (S.D. Tex. 1996) .................................................................................18

*Cole v. Gen. Motors Corp.*,
484 F.3d 717 (5th Cir. 2007) ............................................................................................22

*Coleman v. Wells Fargo Bank Nat'l Ass'n*,
2013 WL 12126006 (W.D. Tex. Jan. 2, 2013), *report and recommendation adopted*,
2013 WL 12121480 (W.D. Tex. Mar. 6, 2013) ...................................................................9

*Colindres v. QuitFlex Mfg.*,
235 F.R.D. 347 (S.D. Tex. 2006).......................................................................................28

*Cooper v. Tex. Alcoholic Beverage Comm'n*,
820 F.3d 730 (5th Cir. 2016) ............................................................................................25

*Corley v. Entergy Corp.*,
222 F.R.D. 316 (E.D. Tex. 2004).......................................................................................21

*Cushman v. GC Servs., L.P.*,
397 F. App'x 24 (5th Cir. 2010) .........................................................................................8

*D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*,
973 S.W.2d 662 (Tex. 1998)..............................................................................................14

*DeBremaecker v. Short*,
433 F.2d 733 (5th Cir. 1970) ......................................................................................16, 29

*Deep Marine Tech., Inc. v. Conmaco/Rector, L.P.*,
515 F. Supp. 2d 760 (S.D. Tex. 2007) ..............................................................................26

*Donelson v. Ameriprise Fin. Servs., Inc.*,
999 F.3d 1080 (8th Cir. 2021) ..........................................................................................21

*Finnell v. Seismic*,
    67 P.3d 339 (Okla. 2003) ............................................................................26

*Fisher v. Primerica Life Ins. Co.*,
    2017 WL 10846281 (E.D. Tex. Dec. 13, 2017) ...........................................11

*In re Ford Motor Co. Bronco II Prod. Liab. Litig.*,
    177 F.R.D. 360 (E.D. La. 1997) ............................................................21, 27

*Ford Motor Co. v. Ocanas*,
    138 S.W.3d 447 (Tex. App. 2004) ...............................................................25

*Gene & Gene LLC v. BioPay LLC*,
    541 F.3d 318 (5th Cir. 2008) ..................................................................7, 20

*Goel v. Coal. Am. Holding Co.*,
    2011 WL 13128300 (C.D. Cal. July 5, 2011) ..............................................17

*Greer v. Carpenters Landing HOA*,
    2020 WL 2476778 (S.D. Tex. Apr. 6, 2020), *report and recommendation adopted
    sub nom. Greer v. Carpenters Landing Homeowners Ass'n, Inc.*, 2020 WL 2475756
    (S.D. Tex. May 13, 2020) .............................................................................16

*Guey Ming Yeh v. Safeco Ins. Co. of Ind.*,
    2018 WL 1858151 (E.D. Tex. Apr. 18, 2018) ........................................6, 8, 11

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) .....................................................................................25

*Henry Schein, Inc. v. Stromboe*,
    102 S.W.3d 675 (Tex. 2002) ........................................................................25

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*,
    302 F.3d 552 (5th Cir. 2002) .....................................................................6, 9

*Holmes v. Serv. Corp. Int'l*,
    2014 WL 3046971 (S.D. Tex. July 3, 2014) ................................................20

*Ibe v. Jones*,
    836 F.3d 516 (5th Cir. 2016) .........................................................................6

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011) ........................................................................24

*Jimenez v. Compass Bank*,
    2012 WL 13055597 (S.D. Tex. June 15, 2012) .....................................19, 29

*John v. Nat'l Sec. Fire & Cas. Co.*,
  501 F.3d 443 (5th Cir. 2007) ....................................................................6, 7, 16

*Lewellen v. Franklin*,
  441 S.W.3d 136 (Mo. 2014) .................................................................................26

*Lollar v. A.O. Smith Harvestore Prod., Inc.*,
  795 S.W.2d 441 (Mo. Ct. App. 1990)...................................................................24

*Maxus Exploration Co. v. Moran Bros., Inc.*,
  817 S.W.2d 50 (Tex. 1991).................................................................................23

*May v. Ocwen Loan Servicing, LLC*,
  2014 WL 2586614 (E.D. Tex. June 9, 2014)........................................................14

*Metro. Life Ins. Co. v. Hayden & Co.*,
  158 F.3d 584 (5th Cir. 1998) ..............................................................................14

*Neely v. Ethicon, Inc.*,
  2001 WL 1090204 (E.D. Tex. Aug. 15, 2001) .....................................................24

*Oxford v. Williams Companies, Inc.*,
  137 F. Supp. 2d 756 (E.D. Tex. 2001)..................................................................27

*Patterson v. McMickle*,
  191 S.W.3d 819 (Tex. App. 2006).......................................................................12

*Pfeffer v. HSA Retail, Inc.*,
  2012 WL 1910034 (W.D. Tex. May 24, 2012) .............................................19, 29

*Pharm. Rsch. & Mfrs. of Am. v. D.C.*,
  406 F. Supp. 2d 56 (D.D.C. 2005), *aff'd sub nom. Biotechnology Indus. Org. v.*
  *D.C.*, 496 F.3d 1362 (Fed. Cir. 2007) .................................................................25

*Pilgrim v. Universal Health Card, LLC*,
  2010 WL 1254849 (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011)..............28

*R.R. Mgmt. Co. v. CFS La. Midstream Co.*,
  428 F.3d 214 (5th Cir. 2005) ..............................................................................22

*Reedy v. Phillips 66 Co.*,
  2018 WL 1413087 (S.D. Tex. Mar. 20, 2018).......................................................27

*Rogers v. Fed. Express Corp.*,
  20 F.3d 902 (8th Cir. 1994) ................................................................................27

*Roland v. Flagstar Bank, FSB*,
  2014 WL 94356 (E.D. Tex. Jan. 9, 2014).............................................................14

*Rosa v. Am. Water Heater Co.*,
  177 F. Supp. 3d 1025 (S.D. Tex. 2016) ...............................................................................27

*S. Cnty., Inc. v. First W. Loan Co.*,
  871 S.W.2d 325 (1994) ........................................................................................................26

*Salek v. SunTrust Mortg., Inc.*,
  2018 WL 3756887 (S.D. Tex. Aug. 8, 2018) ......................................................................13

*Simien v. C. R. Bard, Inc.*,
  2020 WL 4922331 (E.D. Tex. Aug. 20, 2020) ....................................................................11

*Spence v. Glock, Ges.m.b.H.*,
  227 F.3d 308 (5th Cir. 2000) ...................................................................................19, 22, 23

*Sterling Chems., Inc. v. Texaco, Inc.*,
  259 S.W.3d 793 (Tex. App. 2007) .......................................................................................13

*Stipelcovich v. Directv, Inc.*,
  129 F. Supp. 2d 989 (E.D. Tex. 2001) ................................................................................25

*Stube v. Pfizer Inc.*,
  446 F. Supp. 3d 424 (W.D. Ark. 2020) ...............................................................................26

*Sw. Bell Tele. Co. v. DeLanney*,
  809 S.W.2d 493 (Tex. 1991) ..........................................................................................13, 26

*Tsao v. Ferring Pharms., Inc.*,
  2017 WL 746451 (S.D. Tex. Jan. 4, 2017), *report and recommendation adopted*,
  2017 WL 749009 (S.D. Tex. Feb. 24, 2017) ......................................................................12

*Vanderbol v. State Farm Mut. Auto Ins. Co.*,
  2020 WL 7327996 (E.D. Tex. Sept. 1, 2020), *report and recommendation adopted
  in relevant part*, 2020 WL 6866393 (E.D. Tex. Nov. 23, 2020) .........................................11

*Weddington v. Henry*,
  202 P.3d 143 (Okla. 2008) ..................................................................................................24

*Wiley v. Jasper Tex. City Police Dep't*,
  2018 WL 1867160 (E.D. Tex. Mar. 20, 2018), *report and recommendation adopted*,
  2018 WL 1863536 (E.D. Tex. Apr. 18, 2018) ....................................................................15

*U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*,
  417 F.3d 450 (5th Cir. 2005) .................................................................................................6

*Xtria LLC v. Tracking Sys., Inc.*,
  2007 WL 1791252 (N.D. Tex. June 21, 2007) ....................................................................16

*Yates v. Liberty Mut. Gen. Ins. Co.*,
    2018 WL 6303761 (W.D. Tex. Dec. 3, 2018), *report and recommendation adopted*,
    2019 WL 1313459 (W.D. Tex. Feb. 7, 2019) .................................................................16, 29

*Yumilicious Franchise, L.L.C. v. Barrie*,
    819 F.3d 170 (5th Cir. 2016) ............................................................................12

## STATUTES

12A Okla. St. Ann. § 1-303 ...................................................................................24

Kan. Stat. Ann. § 60-3702(e) ..............................................................................26

Tex. Bus. & Com. Code Ann.
    § 17.45(4) .........................................................................................................8
    § 17.45(6) .......................................................................................................18
    § 17.45(10) .......................................................................................................8
    § 17.46(b)(27) .................................................................................................17

Tex. Civ. Prac. & Rem. Code
    § 33.001 ...........................................................................................................26
    § 41.008(b) .......................................................................................................26

## RULES

FED. R. CIV. P.
    9(b) ................................................................................................ *passim*
    12(b)(6) ............................................................................................. *passim*
    23 .................................................................................................................6, 7
    23(a) ...............................................................................................................20
    23(b) ...............................................................................................................20
    23(b)(1) ...........................................................................................................20
    23(b)(2) .......................................................................................................20, 21
    23(b)(3) ...................................................................................................3, 20, 22
    23(c)(4) ......................................................................................................3, 28
    23(c)(4) ...........................................................................................................28
    23(c)(5) ...........................................................................................................28
    23(d)(1)(D) .......................................................................................................7

## TREATISES

7AA Fed. Prac. & Proc. § 1772 (3d ed. 2021) .....................................................20

Restatement (Second) of Conflict of Laws § 145 ..................................................23

## OTHER AUTHORITIES

https://www.texasattorneygeneral.gov/news/releases/ag-paxton-48-texas-gas-stations-agree-
refund-consumers-hurricane-harvey-price-gouging ..............................................................18

Defendant Symmetry Energy Solutions, LLC ("Symmetry") files this motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6) and 9(b), Counts II, III, IV, and, to the extent it seeks declaratory relief, Count V of the First Amended Class Action Complaint, Dkt. No. 6 (the "Amended Complaint") filed by Certified Roses, Inc. ("Certified Roses") and 502 Scenic Drive, LLC ("502 Scenic Drive" and, together with Certified Roses, "Plaintiffs"). Symmetry also files this motion to dismiss the allegations in the Amended Complaint in which Plaintiffs seek to represent nationwide and Texas-based classes of Symmetry customers whose natural gas bills for February 2021 were affected by Winter Storm Uri.

## INTRODUCTION

Between February 11 and 19, 2021, Winter Storm Uri, which Plaintiffs acknowledge was "an unprecedented winter storm," wreaked havoc in Texas and certain other states. Amended Complaint ("Compl.") ¶¶ 14, 52. As Plaintiffs concede, market forces drove natural gas prices to record highs, as freezing temperatures significantly increased the demand for natural gas, while the storm conditions significantly curtailed the availability of natural gas, dramatically decreasing supply. *Id.* ¶¶ 16-17. According to Plaintiffs, this constituted a "significant disruption" in the natural gas market that resulted in "historically high prices" for natural gas. *Id.* ¶ 18. Symmetry is a natural gas retail marketer and sold gas to Plaintiffs during the storm at prices Plaintiffs now do not want to pay. Plaintiffs' own allegations demonstrate that Symmetry (1) had no control over these prices, (2) took steps leading up to and during the storm to put Plaintiffs on notice that Symmetry would continue to provide all necessary gas services to its customers, while urging customers to use less gas if possible, and (3) warned customers "to expect substantial increases in market prices" for natural gas. *Id.* ¶¶ 19-20. Plaintiffs continued to use the gas they decided to use and Symmetry then invoiced Plaintiffs for their gas usage.

Plaintiffs are unhappy with the market cost of their gas usage during this time. As a result, they filed this action alleging that the invoices Symmetry issued to them breached their respective contracts. This is thus a straightforward contract case. Plaintiffs' claims for breach of contract will ultimately be found to be meritless. Yet Plaintiffs bring a number of non-contractual claims for violation of the Texas Deceptive Trade Practices Act ("DTPA"), negligent misrepresentation, negligence, and injunctive/declaratory relief that are nothing more than impermissible attempts to repackage their breach of contract allegations. These claims should be dismissed now for a number of reasons:

- Plaintiffs' purported claims for violation of the DTPA should be dismissed because they have alleged no facts showing that they meet the statute's standing requirements; in fact, nowhere in their Amended Complaint do Plaintiffs even allege that they are "consumers," let alone provide any factual allegations to support such a suggestion.

- Plaintiffs' DTPA claims and negligent misrepresentation claims fail to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) because they offer only generic and vague allegations of misrepresentations without pleading any specifics as to the who, what, where, when, why, or how of any alleged misstatements.

- Plaintiffs' DTPA, negligence, and negligent misrepresentation claims are barred by the economic loss rule that precludes recovery on tort claims that are the subject of a contract between the parties.

- Because they are already maintaining a breach of contract claim, Plaintiffs are not entitled to pursue a duplicative declaratory judgment of breach.

Additionally, Plaintiffs have proposed a "Nationwide Class" and a "Texas Class" that are each impossibly vague because they are defined according to the inherently subjective notion of customers being charged "excessive and/or exorbitant prices." These class allegations should also be dismissed for multiple reasons:

- Ascertaining membership in either class will require the Court to sift through numerous individualized and localized issues for each customer, including with respect to each customer's contracts, charges, storm effects, local supply and demand issues, reliance on alleged misrepresentations, and alleged damages,

among many other issues that will need to be decided on a customer-by-customer basis.

- The proposed Nationwide Class is inherently flawed because adjudicating the claims of each putative class member would require an individualized choice of law analysis and application of – according to Plaintiffs' own Amended Complaint – the laws of more than thirty states. And claims based on the DTPA, which only applies to consumers in Texas, are antithetical to nationwide class application.[1]

- Moreover, amendment of the Nationwide Class allegations would be futile, as courts regularly hold that putative classes implicating the laws of multiple states cannot be certified under Rule 23(b)(3).

- Plaintiffs do not propose any particular issues or subclasses under Rules 23(c)(4) or (5), and even if they did, variations in state law would preclude certification of a nationwide issues class or subclass.

Thus, Plaintiffs' claims constitute, at most, claims for alleged breaches of their separate contracts. Plaintiffs' efforts to repackage their breach of contract allegations into non-contractual claims are unavailing. The Court also should not permit Plaintiffs to try to litigate the claims of thousands of customers with different contracts, in different states, governed by different state laws, and involving unique factual and legal issues regarding their claims, alleged damages, and Symmetry's defenses.

## **RELEVANT FACTS**[2]

Symmetry is a leading energy marketer providing over 1 trillion cubic feet of natural gas to more than 100,000 customers in over 30 states. *See* Compl. ¶ 11. With strong national buying power and deep experience across various industries, Symmetry is able to save its customers significant energy costs. As a retail natural gas marketer, Symmetry does not produce natural gas, but rather purchases natural gas from upstream suppliers and sells it to downstream customers,

---

[1] To the extent Plaintiffs seek to apply the DTPA to consumers outside Texas, that would be an unconstitutional violation of the dormant Commerce Clause.  *See infra* n. 11.

[2] For the purposes of this motion, Symmetry accepts the allegations in the Amended Complaint as true.

including Plaintiffs. The price of natural gas is set by the market, and Symmetry incurs supply costs largely at the time of purchase and passes those costs along to its customers per their contracts. *See id.* ¶ 20, n. 7.

Certified Roses and 502 Scenic Drive contracted with Symmetry to provide natural gas for their business and apartment complex, respectively. *See id.* ¶¶ 9-10. Specifically, Plaintiffs and Symmetry entered into "Gas Sales Agreements" and "Transaction Confirmations" (collectively, the "Contracts"). *See id.*, Ex. A-B. The Contracts are index price contracts, tying the price for natural gas to the market price. Plaintiffs do not, and cannot, allege that Symmetry plays any role in that.

During the "unprecedented" Winter Storm Uri, demand for natural gas increased significantly due to freezing temperatures. Those temperatures also significantly decreased supply by severely curtailing the availability of natural gas. *Id.* ¶¶ 16-17. Plaintiffs characterize these effects as a "significant disruption" that caused "historically high prices" for natural gas. *Id.* ¶ 18.

Symmetry took immediate action to address the storm and resulting disruptions. On February 12, 2021, Governor Greg Abbott declared a state of emergency in Texas. *Id.*, Ex. C. The same day, Symmetry notified Plaintiffs of the potential for service interruptions, telling them "to expect substantial increases in market prices." *Id.* ¶ 19. Plaintiffs refer to this notice in the Amended Complaint, but did not attach it as an exhibit. The full text of the notice indicates that Symmetry "encourage[d] [customers] to immediately contact [their Symmetry] sales representative to discuss . . . measures [they] may be able to take to mitigate [their] exposure to significantly expensive transporter penalties and/or overtake gas." *See* Ex. 1.[3]

---

[3] While it is not necessary to decide this motion, Symmetry has attached the notice to give the Court more complete context behind Plaintiffs' allegations.

On March 15, 2021, Symmetry told customers, including Plaintiffs, that February 2021 invoices "will, where applicable, include separate line items for the additional costs to supply your natural gas during Winter Storm Uri." Compl. ¶ 20. The following day, Plaintiffs received their February 2021 invoices, which stated that they "reflect[] the market impact of Winter Storm Uri." *Id.*, Ex. D at 1, Ex. E at 1. And indeed Plaintiffs themselves allege "Symmetry passed on the supply costs it incurred when purchasing natural gas to meet demand during the winter storm." *Id.* ¶ 21. Nowhere do Plaintiffs allege that they did not demand the natural gas Symmetry provided. In fact, they acknowledge that Symmetry secured gas in order "to meet customers' needs." *Id.*[4]

The Amended Complaint asserts five claims: breach of contract, violation of the DTPA, negligent misrepresentation, negligence, and injunctive/declaratory relief. Plaintiffs structured their Amended Complaint in a manner that appears to recognize the impossibility of maintaining this case on a nationwide class basis, because Plaintiffs purport to represent two putative classes, one national and one limited to Texas. The putative National Class includes:

> All persons or entities who purchased or obtained natural gas services from Symmetry and were charged and/or paid excessive and/or exorbitant natural gas prices and costs during and because of Winter Storm Uri of February 2021.

*Id.* ¶ 25. The putative Texas Class includes:

> All persons or entities who purchased or obtained natural gas services in Texas from Symmetry and were charged and/or paid excessive and/or exorbitant natural gas prices and costs during and because of Winter Storm Uri of February 2021.

*Id.* ¶ 26. Thus, to be part of either putative class, an individual must have been allegedly charged "excessive and/or exorbitant natural gas prices and costs" (a standard Plaintiffs nowhere define),

---

[4] Symmetry discovered an error on Certified Roses' invoice and is reissuing the invoice, which, due to individualized circumstances relating to the supply of gas to Certified Roses during the storm, reverses the Incremental Supply Costs Certified Roses complains of, resulting in a substantial reduction in the invoiced amount.

and any such costs must have been incurred "during and because of Winter Storm Uri" (a notion that will vary from individual invoice to invoice and will invite, *inter alia*, numerous issues of causation that will vary widely from customer to customer and, for the putative National Class, from state to state).

## LEGAL STANDARDS

Under Rule 12(b)(6), dismissal of a complaint is proper if it fails to state a claim upon which relief can be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). A complaint cannot only offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a complaint must be dismissed when it fails to show a right to relief beyond mere speculation. *See Twombly*, 550 U.S. at 555-56.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged. *See U.S. ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). Failure to comply with Rule 9(b) requires dismissal. *See Guey Ming Yeh v. Safeco Ins. Co. of Ind.*, 2018 WL 1858151, at *3 (E.D. Tex. Apr. 18, 2018).

"Rule 23 governs whether a proposed class falls within the limited exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). A proposed class must be defined with enough precision that a court can ascertain membership in the class. *See John v. Nat'l Sec. Fire & Cas. Co.*, 501

F.3d 443, 445 (5th Cir. 2007) ("The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."). To certify a class, Plaintiffs must satisfy the requirements of Rule 23(b)(1), (2), or (3). *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008). As the Fifth Circuit has observed, "commit[ing] the fate" of a defendant and unnamed claimants to a single jury marks a dramatic departure from traditional practice, and must not be taken lightly. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 752 (5th Cir. 1996).

Rule 23(d)(1)(D) provides that a district court "may issue orders that . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." As such, "[w]here it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *John*, 501 F.3d at 445. "Courts have routinely applied Rule 23(d)(1)(D) . . . to actions where a party seeks to strike class allegations because plaintiffs have not met the requirements of Rule 23. A court may strike class allegations under Rule 23 where a complaint fails to plead the minimum facts necessary to establish the existence of a class." *Carlisle v. Normand*, 2017 WL 2256789, at *5 (E.D. La. May 23, 2017), *aff'd sub nom. Carlisle v. Mussal*, 774 F. App'x 905 (5th Cir. 2019).

## ARGUMENT

## I. The Court Should Dismiss Counts II-V Of The Amended Complaint

Even accepting Plaintiffs' allegations as true, this is a straightforward breach of contract case and nothing more. While Plaintiffs will ultimately be unsuccessful on that claim, for the reasons set forth below their duplicative claims for violation of the DTPA, negligent misrepresentation, negligence, and declaratory relief must be dismissed at this stage.

### A.   Plaintiffs Do Not Allege That They Are "Consumers," And Thus Lack Standing To Bring DTPA Claims

Plaintiffs' DTPA claims should be dismissed because Plaintiffs fail to allege a necessary element of DTPA claims: that they are "consumers" as defined by the statute. Only a "consumer" can state a claim under the DTPA. *See Cushman v. GC Servs., L.P.*, 397 F. App'x 24, 27–28 (5th Cir. 2010). The DTPA excludes from the definition of "consumer" "a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." Tex. Bus. & Com. Code Ann. § 17.45(4).[5] Plaintiffs do not anywhere allege that they are "consumers," let alone offer any allegations whatsoever that they meet the statutory definition, including that they have assets of less than $25 million. This failure alone requires dismissal of their DTPA claims. *See Charles v. K-Patents., Inc.*, 2018 WL 9869532, at *11 (E.D. Tex. Aug. 10, 2018) (dismissing DTPA claims where "Plaintiffs have alleged no facts indicating that they purchased" the goods necessary to establish standing).

### B.   Plaintiffs Fail to Satisfy The Heightened Pleading Standards Of Rule 9(b) For Their DTPA And Negligent Misrepresentation Claims

The heightened pleading requirements of Rule 9(b) apply to Plaintiffs' claims for violation of the DTPA and negligent misrepresentation. *See Guey Ming Yeh*, 2018 WL 1858151, at *3 ("Claims alleging violations of . . . the DTPA . . . and negligent misrepresentation . . . are subject to the requirements of Rule 9(b)."); *Berry v. Indianapolis Life Ins. Co.*, 2010 WL 3422873, at *14 (N.D. Tex. Aug. 26, 2010) ("[T]he Fifth Circuit has found negligent misrepresentation claims subject to Rule 9(b) in the same manner as fraud claims."). Plaintiffs' allegations fall woefully short of Rule 9(b)'s particularity requirements.

---

[5] A "business consumer" is "an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services for commercial or business use." Tex. Bus. & Com. Code Ann. § 17.45(10).

Plaintiffs' DTPA and negligent misrepresentation claims boil down to a few generalized assertions:

- Symmetry allegedly misled Plaintiffs into believing its plans would reflect its "local market expertise," meet their "budgetary needs," offer "competitive pricing," reflect "a reasonable price," and not be subject to "severe fluctuations." *See* Compl. ¶¶ 47, 50.

- Symmetry allegedly failed to disclose the risk of plans passing "excessive" prices through to customers. *See* Compl. ¶ 47.

- Symmetry allegedly engaged in price gouging during a disaster. *See* Compl. ¶ 52.

- Symmetry's alleged charging of "excessive" prices was unconscionable because it took advantage of Plaintiffs' inability to understand Symmetry's supposed "tactics." *See* Compl. ¶ 54.

These allegations are all conclusory and fail to meet Rule 9(b)'s particularity requirements, or even Rule 12(b)(6)'s plausibility standard. To comply with Rule 9(b), a plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd.*, 302 F.3d at 564-65. But Plaintiffs do not identify with particularity what any of the alleged misrepresentations were, much less who made them, when or where they were made, or why they were fraudulent. *See Barnett v. Forest River, Inc.*, 2017 WL 7733052, at *3 (E.D. Tex. Nov. 29, 2017) (dismissing DTPA claims that failed to meet Rules 9(b) and 12(b)(6) because petition only "recites threadbare recitations of a DTPA violation" and "does not reveal who made the representation or explain why it was false, misleading, or deceptive"); *Coleman v. Wells Fargo Bank Nat'l Ass'n*, 2013 WL 12126006, at *6 (W.D. Tex. Jan. 2, 2013), *report and recommendation adopted*, 2013 WL 12121480 (W.D. Tex. Mar. 6, 2013) (dismissing DTPA and fraud claims when the complaint failed to "identify any specific person making a representation, when the representation was made, or the content of the representation . . . [or] how [plaintiffs] acted in reliance upon any purported representation or how [plaintiffs] were injured thereby.").

### 1.     Plaintiffs Fail To State What Alleged Misrepresentations Symmetry Made

Plaintiffs provide no allegations about what was allegedly said to them to supposedly lead them to believe Symmetry's plans would reflect local market expertise, meet their budgetary needs, offer competitive pricing, reflect a reasonable price, and not be subject to severe fluctuations. In fact, Plaintiffs do not identify any actual statements allegedly made by Symmetry at all. The absence of such allegations leaves Symmetry and the Court with no notice as to what alleged misrepresentations were made.

### 2.     Plaintiffs Fail To State Who Made Any Alleged Misrepresentations

Nor do Plaintiffs identify who at Symmetry made any alleged misrepresentations to them. Plaintiffs do not even indicate in the Amended Complaint who they have communicated with at Symmetry.

### 3.     Plaintiffs Fail To State Where or When Any Alleged Misrepresentations Were Made

Plaintiffs also fail to identify when, where, or in what setting any alleged misrepresentations were made to them. They do not, for instance, explain what advertisements they supposedly saw, let alone what they relied on, what form any marketing statements took, or when they were supposedly made. Nor do Plaintiffs identify whether any alleged misrepresentations were made orally or in writing.

### 4.     Plaintiffs Fail To State How Or Why Any Alleged Misrepresentations Were Misleading

The Amended Complaint also falls short in alleging how or why any alleged representations were misleading. For example, Plaintiffs do not allege how Symmetry could have failed to disclose the risk that its plans passed the costs of natural gas through to customers when the Contracts contemplate Symmetry charging market prices, plus a modest addition of 25 or 30

cents per mmBTU of natural gas. Plaintiffs also do not plausibly allege what Symmetry's supposed pricing "tactics" were, or why they were unable to understand them. Plaintiffs claim not to understand the Incremental Supply Costs set forth on their invoices, *see* Compl. ¶ 22, but also contradictorily allege that the Incremental Supply Costs are pass-through supply costs associated with Symmetry's purchase of natural gas to meet demand during an unprecedented winter storm. *See id.* ¶ 21.

### 5. Plaintiffs Fail To State How Symmetry Allegedly Engaged In Price-Gouging

Nor do Plaintiffs allege how Symmetry price-gouged by "excessively rais[ing] natural gas prices and costs." Compl. ¶ 52. Importantly, they do not and cannot allege Symmetry controlled, managed, or affected natural gas prices or costs.

Courts regularly dismiss these types of vague and generalized allegations due to a lack of requisite "particularity" under Rule 9(b). *See, e.g., Vanderbol v. State Farm Mut. Auto Ins. Co.*, 2020 WL 7327996, at *15 (E.D. Tex. Sept. 1, 2020), *report and recommendation adopted in relevant part*, 2020 WL 6866393 (E.D. Tex. Nov. 23, 2020) ("Without considering such conclusory allegations, Plaintiffs' Third Amended Complaint fails to allege any facts supporting Plaintiffs' DTPA claims."); *Simien v. C. R. Bard, Inc.*, 2020 WL 4922331, at *12 (E.D. Tex. Aug. 20, 2020) (dismissing DTPA claims where complaint made only "generic" allegations); *Guey Ming Yeh*, 2018 WL 1858151, at *5 ("Plaintiffs fail to plead sufficient facts to state a plausible claim that Defendant acted unreasonably . . . . Specifically, Plaintiffs fail to plead any facts that would show that . . . Defendant failed to disclose information concerning any goods or service in support of her DTPA claims."); *Fisher v. Primerica Life Ins. Co.*, 2017 WL 10846281, at *9 (E.D. Tex. Dec. 13, 2017) (denying DTPA claims where plaintiff did "not meet the specificity

requirements of Rule 9(b)" and thus "failed to plead sufficient facts to demonstrate a plausible cause of action").[6]

With respect to their negligent misrepresentation claims, Plaintiffs make a few additional token assertions that are baseless when viewed in light of their other allegations. First, Plaintiffs allege that, "[i]f its plans could result in an outrageous price increase from the previous year or from month to month, Symmetry should have disclosed the possibility of such an outcome." Compl. ¶ 62. But Plaintiffs allege that their natural gas prices were tied to market prices, and Plaintiffs do not make any allegations as to what else Symmetry should have disclosed about the risk of market prices rising due to weather events.[7] And Plaintiffs concede that, when Winter Storm Uri arrived, Symmetry did warn customers of high prices the same day that Gov. Abbott declared a state of emergency. *See id.* ¶ 19.

Second, Plaintiffs imply that if Symmetry had applied its "local market expertise" to offer competitive and reasonable pricing, they would not have been subjected to price increases in their February 2021 invoices. *See id.* ¶ 61. Yet Plaintiffs acknowledge the storm was "unprecedented" and was the cause of "historically high prices." *Id.* ¶¶ 18, 52. Of course, Plaintiffs do not allege that Symmetry had any control over the storm or the market forces affecting natural gas prices. *Cf. Yumilicious Franchise, L.L.C. v. Barrie*, 819 F.3d 170, 175 (5th Cir. 2016) ("[O]ne cannot be held liable under the DTPA for failure to disclose facts about which he does not know.").

---

[6] *See also Tsao v. Ferring Pharms., Inc.*, 2017 WL 746451, at *9-10 (S.D. Tex. Jan. 4, 2017), *report and recommendation adopted*, 2017 WL 749009 (S.D. Tex. Feb. 24, 2017) (dismissing DTPA claims based on "vague" allegations); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009) (dismissing DTPA claims where complaint did not specify how or where alleged misrepresentations were made).

[7] Moreover, "[m]ere nondisclosure of material information is not enough to establish an actionable DTPA claim." *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006).

Third, Plaintiffs claim that "the information given to [customers] was grossly inadequate to ascertain the services and risks," and that Symmetry's communications "during and after the winter storm perpetuated the falsities." Compl. ¶ 63. But Plaintiffs do not allege the particulars of what information was given to customers or why it was allegedly inadequate to assess Symmetry's services; nor do they allege what communications supposedly "perpetuated" falsities during and after the storm, or even what these alleged "falsities" are. These vague allegations are insufficient to meet Rule 9(b)'s particularity requirement.

### C. The Economic Loss Rule Bars Plaintiffs' DTPA, Negligence, And Negligent Misrepresentation Claims

Under Texas law, the economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties. *See Sw. Bell Tele. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."). To determine whether a plaintiff may recover on a tort theory, courts look at the nature of the plaintiff's loss. *See Sterling Chems., Inc. v. Texaco, Inc*., 259 S.W.3d 793, 796-98 (Tex. App. 2007) ("[A] duty in tort does not lie when the only injury claimed is one for economic damages recoverable under a breach of contract claim."). The economic loss rule applies to DTPA claims. *See Salek v. SunTrust Mortg., Inc.*, 2018 WL 3756887, at *6 (S.D. Tex. Aug. 8, 2018) (dismissing DTPA claim that was "barred by the 'economic loss rule'").

Under the economic loss rule, a plaintiff may not bring a claim for a DTPA violation, negligence, or negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is "distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Sterling Chems.*, 259 S.W.3d at 797, 800 (holding that economic loss rule precluded plaintiff from "seeking to recover for economic losses sustained by virtue of the

failure of the subject of its contract"). "Thus, the rule restricts contracting parties to contractual remedies for economic losses associated with their relationship, 'even when the breach might be reasonably viewed as a consequence of a contracting party's negligence.'" *Roland v. Flagstar Bank, FSB*, 2014 WL 94356, at *10 (E.D. Tex. Jan. 9, 2014) (dismissing allegations of negligent misrepresentations when plaintiff sought contractual damages). The burden is on the plaintiff to demonstrate an independent injury. *Id.*

Here, other than a rote allegation that they seek "actual and exemplary damages, costs, and interest," Compl. ¶ 64, Plaintiffs offer no allegation regarding economic losses that are distinct, separate, and independent from their alleged contractual losses. *See Roland*, 2014 WL 94356, at *10 ("[T]he petition states only that he has suffered actual and consequential damages. Thus, it appears Roland seeks contractual damages, which are not recoverable for negligent misrepresentation."); *May v. Ocwen Loan Servicing, LLC*, 2014 WL 2586614, at *7 (E.D. Tex. June 9, 2014) ("Plaintiff's claim arises from claims dependent upon the existence of a contract. Any complaints by Plaintiff about Defendants' actions arise from the parties' contractual relationship under the terms of the loan documents and cannot, as a matter of law, form the basis of a negligence or negligent misrepresentation claim."); *Metro. Life Ins. Co. v. Hayden & Co.*, 158 F.3d 584, at *7 (5th Cir. 1998) (affirming Rule 12(b)(6) dismissal of DTPA claims where plaintiffs "allege[] no damages independent of [their] contractual injuries," meaning their "DTPA claim is essentially a breach of contract claim") (unpublished decision); *D.S.A. Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 664 (Tex. 1998) (finding plaintiff's "negligent misrepresentation claim must fail for lack of any independent injury").

These deficiencies in the Amended Complaint are legal in nature and cannot be remedied by further factual allegations; no matter how many more facts Plaintiffs allege, the economic loss

rule still precludes Plaintiffs from recovering for claimed losses that are duplicative of the alleged losses from their breach of contract claims. Therefore, it would be futile for Plaintiffs to amend the Amended Complaint yet again. *See Wiley v. Jasper Tex. City Police Dep't*, 2018 WL 1867160 (E.D. Tex. Mar. 20, 2018), *report and recommendation adopted*, 2018 WL 1863536 (E.D. Tex. Apr. 18, 2018) (when plaintiff's claims are legally deficient and thus "fail to state a claim upon which relief can be granted," allowing plaintiff "to amend those claims would be futile"); *Charles*, 2018 WL 9869532, at *12 (dismissing DTPA claims with prejudice where amendment would be futile because plaintiffs lacked standing under the statute).

Furthermore, Plaintiffs' Contracts both contain "Limitation of Liability" provisions that preclude Plaintiffs from seeking remedies that are distinct, separate, or independent from their contractual losses. The Contracts expressly limit remedies to direct damages under the Contracts:

> IF NO REMEDY OR MEASURE OF DAMAGES IS EXPRESSLY PROVIDED, A PARTY'S LIABILITY SHALL BE LIMITED TO DIRECT ACTUAL DAMAGES ONLY, AND NEITHER PARTY SHALL BE LIABLE FOR CONSEQUENTIAL, INCIDENTAL, PUNITIVE, EXEMPLARY,[8] OR INDIRECT DAMAGES.

Compl., Ex. A § 15, Ex. B § 15.

This limitation extends to remedies for negligence:

> IT IS THE INTENT OF THE PARTIES THAT THE LIMITATIONS HEREIN IMPOSED ON REMEDIES AND THE MEASURE OF DAMAGES BE WITHOUT REGARD TO THE CAUSE OR CAUSES RELATED THERETO, INCLUDING THE NEGLIGENCE OF ANY PARTY, WHETHER SUCH NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, OR ACTIVE OR PASSIVE.

Compl., Ex. A § 15, Ex. B § 15. This agreed-upon limitation also prevents Plaintiffs from further amending the Amended Complaint to allege damages for negligence that go beyond direct

---

[8] Notably, the Contracts explicitly preclude "exemplary" or "punitive" damages. This prevents Plaintiffs from seeking exemplary damages under the DTPA. *See Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 232 (Tex. 2019) ("[P]arties can bargain to limit exemplary damages.").

damages under the Contracts, rendering any amendment futile. *See Greer v. Carpenters Landing HOA*, 2020 WL 2476778, at *3 (S.D. Tex. Apr. 6, 2020), *report and recommendation adopted sub nom. Greer v. Carpenters Landing Homeowners Ass'n, Inc.*, 2020 WL 2475756 (S.D. Tex. May 13, 2020) ("Because the economic loss rule would bar [plaintiff's] claims against [defendant], amendment would be futile, and the claims should be dismissed with prejudice.").

### D.    Plaintiffs Are Not Entitled To Declaratory Relief

The Amended Complaint requests "a declaration that Symmetry's conduct as alleged herein is unlawful and in breach of its contract with Certified Roses, 502 Scenic Drive, and Class Members." Compl., Prayer for Relief, subsection (e). Like the rest of Plaintiffs' non-contractual claims, this request is impermissibly duplicative of their breach of contract claims and therefore must be dismissed. *See, e.g., Xtria LLC v. Tracking Sys., Inc.*, 2007 WL 1791252, at *3 (N.D. Tex. June 21, 2007) (dismissing declaratory judgment action under Rule 12(b)(6) where it duplicated an existing breach of contract claim).

## II.    The Court Should Dismiss Plaintiffs' Class Allegations

### A.    Plaintiffs' Proposed Nationwide Class Definition Is Not Ascertainable

Because a proposed class must be ascertainable, a court may dismiss class allegations where it is apparent from the pleadings that there is no ascertainable class. *See John*, 501 F.3d at 445 (affirming dismissal of class allegations). Plaintiffs' proposed Nationwide Class definition is not ascertainable because "excessive and/or exorbitant" prices are subjective concepts that render the proposed definition impermissibly imprecise. *See DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (upholding dismissal of class allegations for lack of ascertainability while finding that a "class made up of 'residents of this State active in the peace movement' does not constitute an adequately defined or clearly ascertainable class"); *Yates v. Liberty Mut. Gen. Ins. Co.*, 2018 WL 6303761, at *2 (W.D. Tex. Dec. 3, 2018), *report and recommendation adopted*, 2019 WL

1313459 (W.D. Tex. Feb. 7, 2019) (determining class based on representing "other members of the buying public" to be insufficiently ascertainable); *Goel v. Coal. Am. Holding Co.*, 2011 WL 13128300, at *9 (C.D. Cal. July 5, 2011) (holding where terms used to define proposed class "are imprecise, the Court cannot ascertain the class by reference to objective criteria"). Plaintiffs appear to have borrowed the phrase from the DTPA provision prohibiting price gouging, which prohibits charging an "exorbitant or excessive price" for necessities during a disaster. *See* Tex. Bus. & Com. Code Ann. § 17.46(b)(27).

The Court would have to answer numerous fact-intensive and individualized questions to even attempt to determine if a particular customer is a member of the proposed Nationwide Class. The Court would have to inquire into the pricing terms of each customer's contract, including, for example, whether the gas would be priced based on a published market-based index. However, Plaintiffs nowhere allege (nor could they) that all the customers in the putative classes have contracts similarly predicated on market-based indices.

Then, after conducting a contract-by-contract analysis, the Court would have to determine what price each customer was charged and, to even begin to assess whether that customer was charged "excessive or exorbitant" prices, the Court would have to consider the circumstances affecting each such price, such as the prices charged by the upstream supplier relevant to that particular customer, the market prices in the relevant spot market for any gas Symmetry purchased for such customer as a result of the upstream supplier's supply cuts, the customer's gas usage during Winter Storm Uri, and increased demand due to the storm, all of which might have affected the price the particular customer was charged. Plaintiffs do not allege (nor could they) that members of the putative classes were supplied by the same pipelines and transportation systems, or that the proposed class members' supply systems responded in the same way to the storm.

Plaintiffs also fail to allege that putative class members' supply systems were subject to the same force majeure notices and/or curtailment notices during the storm. In short, the determination of which customers (if any) were allegedly charged "excessive or exorbitant" prices would be highly individualized.

And then, even when all these factors have been considered, Plaintiffs offer no established objective method for the Court to determine whether the amount each customer was charged crosses the line to become "excessive or exorbitant," and thus no way to determine whether each customer should be considered a member of the Nationwide Class. Indeed, the DTPA does not define "exorbitant or excessive prices" or set forth in its terms any objective criteria against which prices should be judged under the Act.[9] And even if it did, Texas law on what constitutes an "exorbitant or excessive" price will not apply to the claims of non-Texas class members. The DTPA requires that the "trade or commerce" in question "directly or indirectly affect[] the people of this state." Tex. Bus. & Com. Code Ann. § 17.45(6); *see Cogan v. Triad Am. Energy*, 944 F. Supp. 1325, 1336 (S.D. Tex. 1996) (holding DTPA inapplicable where "every operative fact occurred outside of the state of Texas"); *Bass v. Hendrix*, 931 F. Supp. 523, 536 (S.D. Tex. 1996) (holding plaintiff failed to establish that DTPA applied to her claims where "any alleged misrepresentations made to [plaintiff] occurred outside of Texas and it could not have been anticipated that they would have an effect on a Texas resident").

Because the DTPA would not govern the issue of what constitutes an "exorbitant or excessive" price for consumers outside of Texas, the Court would have to follow Texas's "most

---

[9] Moreover, external guidance on the meaning of "excessive or exorbitant prices" would preclude Plaintiffs' claims. For example, in a DTPA case involving automobile gas price increases during Hurricane Harvey, the Texas Attorney General settled price-gouging claims with gas stations and agreed that the stations would be exempt from limits on price increases that occurred as a result of "actual increases in their [upstream] fuel costs."  See  https://www.texasattorneygeneral.gov/news/releases/ag-paxton-48-texas-gas-stations-agree-refund-consumers-hurricane-harvey-price-gouging.

significant relationship test" for choice-of-law issues, which "requires that the policies of each state with contacts be examined," in order to determine what state's law applies to each customer. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000). Then the Court would have to apply that law to each customer to determine whether the charged price was "exorbitant or excessive." As such, the ascertainability process would consist of "intensive, timely, costly, and inefficient individualized factual inquiries" under the laws of multiple states, ill-suited to class-wide resolution. *Jimenez v. Compass Bank*, 2012 WL 13055597, at *2 (S.D. Tex. June 15, 2012) (denying certification of class lacking "a sufficiently precise class definition").

In *Pfeffer v. HSA Retail, Inc.*, 2012 WL 1910034, at *1 (W.D. Tex. May 24, 2012), the court considered certification of a class defined as ATM users who made transfers "from an account used primarily for personal or household purposes." In holding that the class was not sufficiently ascertainable, the court found it "would have to determine the nature of each consumer's account in order to ensure that consumers who made an electronic fund transfer to or from a commercial account were properly excluded from the class." *Id.* at *3. Even though the court could have reviewed ATM records to make this determination, it concluded that "because this case involves accounts that were established independently by different consumers, at different banks, and for different purposes, it appears that the Court would have to consider each consumer's account separately," rendering the class definition insufficiently ascertainable. *Id.* at *5. Here, whether each of the myriad prices charged to different customers was "excessive and/or exorbitant" is a far more subjective inquiry, with far more variables, than whether a bank account was used for personal versus commercial purposes.

**B.** **Plaintiffs' Allegations Are Insufficient To Meet Any Of The Requirements Of Rule 23(b) For The Nationwide Class**

To certify a class under Rule 23(b), a plaintiff must meet "the requirements of Rule 23(b)(1), (2), or (3)." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 325 (5th Cir. 2008).[10] Plaintiffs do not even try to allege that they could satisfy Rules 23(b)(1) or (2), and Plaintiffs' allegations otherwise are insufficient to meet the requirements of Rule 23(b)(3).

**1.** **Plaintiffs Offer No Allegations To Meet The Requirements Of Rule 23(b)(1)**

Rule 23(b)(1) authorizes class actions if prosecuting separate actions "would create a risk of . . . incompatible standards of conduct for the party opposing the class" or "would be dispositive of the interests of the other members not parties." In other words, Rule 23(b)(1) applies "when necessary to prevent possible adverse effects, either on the parties opposing the class or on absent class members." 7AA Fed. Prac. & Proc. § 1772 (3d ed. 2021). While Plaintiffs nominally cite Rule 23(b)(1), notably absent from the Amended Complaint is any allegation of possible adverse effects or incompatible results – and for good reason. The proposed classes are an amalgamation of inherently individual contractual relationships between Symmetry and each of its customers, and Plaintiffs seek primarily monetary relief, with four of the five counts in the Amended Complaint involving monetary compensation. Certification under Rule 23(b)(1) "is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs." *Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 197 (5th Cir. 2010); *see also Holmes v. Serv. Corp. Int'l*, 2014 WL 3046971, at *8 (S.D. Tex. July 3, 2014) ("Separate adjudication of claims for

---

[10] To certify a class, Plaintiffs must also satisfy Rule 23(a)'s four threshold requirements – numerosity, commonality, typicality, and adequacy of representation. Symmetry does not concede that Plaintiffs can satisfy Rule 23(a) and reserves all arguments in that regard.

compensatory and punitive damages poses no risk of inconsistent adjudications or incompatible standards of conduct due to the 'individual-specific nature' of such claims.").

### 2. Plaintiffs Offer No Allegations To Meet The Requirements Of Rule 23(b)(2)

Rule 23(b)(2) authorizes class actions if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." While Plaintiffs again nominally cite Rule 23(b)(2), they do not make any allegations regarding its requirements. That is because the monetary relief sought by Plaintiffs predominates. Although Plaintiffs seek declaratory and injunctive relief, the requested damages do not flow from the requested injunctive or declaratory relief, and would have to be computed on an individualized basis. This precludes proceeding under Rule 23(b)(2). *See, e.g., Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 415, 418 (5th Cir. 1998) (holding that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief," and affirming finding that monetary relief predominated); *Casa Orlando*, 624 F.3d at 198 ("[I]njunctive relief is not appropriate to the whole class when final relief relates predominantly to money damages."); *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1093 (8th Cir. 2021) (finding district court abused discretion in failing to dismiss class allegations that failed to meet requirements of Rule 23(b)(2)); *Corley v. Entergy Corp.*, 222 F.R.D. 316 (E.D. Tex. 2004) (denying certification under Rule 23(b)(2) "[b]ecause the calculation of Plaintiffs' damages 'entail[s] complex individualized determinations'"); *In re Ford Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 371–72 (E.D. La. 1997) ("Money damages are the primary remedy sought by plaintiffs, making certification under Rule 23(b)(2) unavailable.").

### 3.   Plaintiffs' Allegations Are Insufficient To Meet The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class actions if "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

To determine the substantive law to apply to each claim, "[w]hen a federal court sits in diversity jurisdiction, it must apply the choice of law rules of the forum state, in this case Texas." *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005). Texas's "most significant relationship test" requires Texas courts to examine the policies of each state with contacts in order to determine which state's substantive law to apply. *See Spence*, 227 F. 3d at 313. Putative classes that implicate the laws of multiple states are routinely held non-certifiable under Rule 23(b)(3) because, "[i]n a multi-state class action, variations in state law may swamp any common issues and defeat predominance." *Castano*, 84 F.3d at 741.

In *Castano*, the Fifth Circuit decertified a nationwide class that "may [have been] the largest class action ever attempted in federal court." *Id.* at 737. The court held the district court erred by failing to account for differences in state law regarding "fraud, products liability, affirmative defenses, negligent infliction of emotional distress, consumer protection statutes, and punitive damages." *Id.* at 742. These differences precluded any finding of "predominance and superiority." *Id.* at 741; *see also Cole v. Gen. Motors Corp.*, 484 F.3d 717, 725 (5th Cir. 2007) (decertifying class due to variations in state contract law resulting from differences in state versions of UCC Article 2 regarding express and implied warranties).

Even minor differences among state laws can defeat predominance. *See*, *e.g.*, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) (decertifying class for district judge's failure

"to consider how the law of negligence differs from jurisdiction to jurisdiction" and noting that where state laws regarding negligence differed in nuance, "nuance can be important"). Here, the Court would need to perform a choice of law analysis for each member of the proposed Nationwide Class – which Plaintiffs assert may include customers in more than thirty states – to determine the state with the most significant relationship to the proposed class member's claim. The Court would then need to apply the law of different states to different putative class members' claims.

With respect to Plaintiffs' breach of contract claims, to determine the governing law, the Court would have to ascertain whether each putative class member's contract contains a choice-of-law provision. For those without a choice-of-law provision – like Plaintiffs' contracts – the Court would have to apply Texas's "most significant relationship test" for choice-of-law issues and examine "the policies of each state with contacts." *See Spence*, 227 F. 3d at 313. Relevant contacts for each customer's case may include the place where the customer's alleged injury occurred; the place where the conduct allegedly causing the alleged injury occurred; the domicile, residence, nationality, place of incorporation, and place of business of the parties; and the place where the relationship between the parties is centered. *See id.* at 312 (enumerating factors under Restatement (Second) of Conflict of Laws § 145).

In a contract case, a court must consider: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). Such an inquiry would require assessment, for example, of where each customer resides, where that customer's Symmetry representatives were located, and where and how negotiations took place, among other considerations. After making this individualized inquiry for each

customer, the Court would then have to apply the relevant governing law to each customer's claims and Symmetry's corresponding defenses. "The difficulties associated with conducting a choice-of-law analysis in this case can be summarized with one word—nationwide." *Neely v. Ethicon, Inc.*, 2001 WL 1090204, at *7 (E.D. Tex. Aug. 15, 2001) (denying certification of nationwide products liability/personal injury class).

Variations in state contract laws would predominate over potential common issues. For instance, although Arkansas, Texas, Kansas, Missouri, and Oklahoma have adopted versions of the Uniform Commercial Code ("UCC") provision regarding parol evidence, the related UCC provision on course of performance, course of dealing, and usage of trade was struck down as unconstitutional in Oklahoma. *See Weddington v. Henry*, 202 P.3d 143 (Okla. 2008) (declaring 12A Okla. St. Ann. § 1-303 unconstitutional and void). States also take varying approaches regarding the enforceability of liability disclaimers in contracts, particularly relating to misrepresentation claims. For example, Missouri law "holds that a party may not, by disclaimer or otherwise, contractually exclude liability for fraud in inducing that contract." *Lollar v. A.O. Smith Harvestore Prod., Inc.*, 795 S.W.2d 441, 448 (Mo. Ct. App. 1990). Other states employ a more flexible approach that focuses on the intent of the parties. *See e.g. Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 332 (Tex. 2011) ("[A] clause that clearly and unequivocally expresses the party's intent to disclaim reliance on the specific misrepresentations at issue can preclude a fraudulent-inducement claim.").

With respect to Plaintiffs' Texas DTPA claims, to establish standing to bring a claim, a plaintiff must show that the acts complained of occurred in Texas or it could have been anticipated that they would have an effect on a Texas resident. *See Bass*, 931 F. Supp. at 536 (holding DTPA inapplicable where alleged misrepresentations were made outside Texas and it could not have been

anticipated that they would affect a Texas resident). The Court would have to undertake an individualized analysis of whether customers outside Texas could even have standing to bring DTPA claims, looking at where each customer was located, where their Symmetry representatives were situated, and whether any effects on Texas residents could have been anticipated. Such individualized issues defeat predominance. *See Stipelcovich v. Directv, Inc.*, 129 F. Supp. 2d 989, 994-95 (E.D. Tex. 2001) (denying certification of nationwide class alleging DTPA violations and involving "[f]ifty-one states' and District of Columbia laws of misrepresentation, detrimental reliance and fraud" because "[c]hoice of law issues in a case so potentially wide-spread geographically can swallow the case" ); *cf. Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 698–99 (Tex. 2002) (decertifying nationwide class alleging DTPA violations and noting that "[s]tate and federal courts have overwhelmingly rejected class certification when multiple states' laws must be applied"); *Ford Motor Co. v. Ocanas*, 138 S.W.3d 447, 453 (Tex. App. 2004) (decertifying nationwide and statewide classes alleging DTPA violations because individualized inquiries regarding reliance predominated over common issues).[11]

---

[11] Even if (i) out-of-state members of the putative class had standing to assert Texas DTPA claims and (ii) a choice of law analysis did not dictate application of the law of a different state, application of the Texas DTPA's price-gouging provision to the claims of out-of-state residents based on gas purchases occurring in other states would be unconstitutional. State statutes that have the practical effect of controlling commerce outside the state's borders are facially or *per se* invalid as violative of the dormant Commerce Clause. *See Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989) ("[T]he Commerce Clause protects against inconsistent legislation arising from the projection of one state regulatory regime into the jurisdiction of another State."); *Cooper v. Tex. Alcoholic Beverage Comm'n*, 820 F.3d 730, 741 (5th Cir. 2016) (the dormant Commerce Clause "prohibits economic protectionism"). That is exactly what the DTPA would do if its price-gouging provision applied to consumers outside of Texas. By controlling prices for the sale of natural gas in states other than Texas, the price-gouging provision would have the effect of "control[ling] commerce occurring wholly outside the boundaries of a State," which would "exceed[] the inherent limits of the enacting State's authority." *Healy*, 491 U.S. at 336. *See also Ass'n for Accessible Meds. v. Frosh*, 887 F.3d 664, 674 (4th Cir. 2018) (holding Maryland price-gouging statute "unconstitutional under the dormant commerce clause because it directly regulates transactions that take place outside Maryland"); *Pharm. Rsch. & Mfrs. of Am. v. D.C.*, 406 F. Supp. 2d 56, 67-71 (D.D.C. 2005), *aff'd sub nom. Biotechnology Indus. Org. v. D.C.*, 496 F.3d 1362 (Fed. Cir. 2007) (holding price-gouging statute had a *per se* invalid extraterritorial reach as it applied to transactions between manufacturers and wholesalers that occur wholly outside the District of Columbia).

With respect to Plaintiffs' negligent misrepresentation claims, certain states, including Arkansas, do not even recognize negligent misrepresentation as an independent cause of action. *See Stube v. Pfizer Inc.*, 446 F. Supp. 3d 424, 442 (W.D. Ark. 2020) ("The Arkansas Supreme Court has expressly refused to recognize an independent cause of action for negligent misrepresentation." (citing *S. Cnty., Inc. v. First W. Loan Co.*, 871 S.W.2d 325, 326 (Ark. 1994))). Furthermore, Plaintiffs seek punitive damages, and states differ in their treatment of such damages. Arkansas and Missouri have no cap on punitive damages. *See Bayer CropScience LP v. Schafer*, 385 S.W.3d 822, 829-32 (Ark. 2011); *Lewellen v. Franklin*, 441 S.W.3d 136, 145 (Mo. 2014). Kansas limits punitive damages to the lesser of either the defendant's annual gross income or $5 million. Kan. Stat. Ann. § 60-3702(e). Punitive damages in Texas are generally capped at either two times the amount of compensatory damages plus the amount equal to the amount of non-economic damages found by a jury not to exceed $750,000, or $200,000, whichever is greater. Tex. Civ. Prac. & Remedies Code § 41.008. Moreover, punitive damages are not available for negligent misrepresentation claims in Texas. *See Deep Marine Tech., Inc. v. Conmaco/Rector, L.P.*, 515 F. Supp. 2d 760, 771 (S.D. Tex. 2007) ("[N]either Texas nor Louisiana provides for exemplary damages in negligent misrepresentation actions." (citing *Beal Bank, S.S.B. v. Schleider*, 124 S.W.3d 640, 650 n.5 (Tex. App. 2003))).

Plaintiffs also assert negligence claims arising from their contracts with Symmetry. Under Texas law, if the alleged negligence arises from a contract, to bring a claim for negligence, the defendant must also have breached a duty imposed by law. *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991) Under Oklahoma law, by contrast, negligent failure to perform a contract may arguably give rise to a contract or a tort action. *See Finnell v. Seismic*, 67 P.3d 339, 344 (Okla. 2003). Moreover, Plaintiffs' potential recovery on their negligence claims will be

limited by the comparative fault doctrine, which differs among states. For example, Texas prohibits recovery in a negligence case if the plaintiff's fault exceeds a defendant's fault or 50 percent. *See* Tex. Civ. Prac. & Rem. Code § 33.001. Conversely, Missouri employs a "pure" comparative fault system, meaning that a plaintiff can recover whatever percentage of fault, however small, is apportioned to any defendant. *See Rogers v. Fed. Express Corp.*, 20 F.3d 902, 904, n.5 (8th Cir. 1994) ("Missouri follows a pure comparative approach, reducing a plaintiff's recovery in proportion to his percentage of fault.").

With, according to Plaintiffs, thousands of putative class members "and the requirement to apply the various state laws pertaining to each individual cause of action," Plaintiffs' proposed Nationwide Class cannot satisfy 23(b)(3)'s predominance requirement. *Oxford v. Williams Companies, Inc.*, 137 F. Supp. 2d 756, 764 (E.D. Tex. 2001). Courts in this Circuit regularly dismiss nationwide class allegations for failure to satisfy predominance. *See, e.g., Brawley v. Bath & Body Works, LLC*, 2019 WL 7945655 (N.D. Tex. Sept. 25, 2019) (granting motion to dismiss nationwide class allegations because requiring court to apply products liability of all fifty states would defeat predominance); *Reedy v. Phillips 66 Co.*, 2018 WL 1413087 (S.D. Tex. Mar. 20, 2018) (granting motion to dismiss nationwide class allegations that would require court to apply products liability and warranty laws of all fifty states because individual questions of law and fact would predominate); *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1050 (S.D. Tex. 2016) (granting motion to dismiss claims asserted on behalf of proposed nationwide class because "the burden of applying the warranty law of each jurisdiction defeats predominance and, thus, national class certification"); *see also Oxford*, 137 F. Supp. 2d at 764 (declining to certify nationwide class at motion to dismiss stage where "[a]djudication of such a class would require application of each pertinent states' and the District of Columbia's trespass. property and remedies laws"); *In re Ford*

*Motor Co. Bronco II Prod. Liab. Litig.*, 177 F.R.D. 360, 371-72 (E.D. La. 1997) (predominance not satisfied given variations in the law of fifty-one jurisdictions and individualized issues of reliance on alleged misrepresentations).

Here, the numerous differences in state laws overwhelm any potential common issues and defeat predominance. To brief substantive issues or adequately instruct a jury, the parties and Court would have to perform a choice of law analysis and then apply the laws of multiple jurisdictions to each putative class member's claims. Such an involved, inefficient exercise defeats the purpose of class action certification, and no amount of discovery will change the result. *See Pilgrim v. Universal Health Card, LLC*, 2010 WL 1254849, (N.D. Ohio Mar. 25, 2010), *aff'd*, 660 F.3d 943 (6th Cir. 2011) (dismissing nationwide class allegations with prejudice where "there is no amount of discovery that could remedy the problems in the complaint," because "[r]egardless of discovery, the Court would be required to utilize the state law of every state in which a consumer purchased" the program card at issue).[12]

### C.    Plaintiffs' Allegations Are Insufficient To Meet The Requirements Of Rule 23(c)

Plaintiffs purport to bring their claims under Rules 23(c)(4) and (5). *See* Compl. ¶ 25. Rule 23(c)(4) provides that, "[w]hen appropriate, an action may be brought or maintained as a class action with respect to particular issues," while Rule 23(c)(5) states that, "[w]hen appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Plaintiffs do

---

[12] In addition to the variations in state law, as discussed above, there are numerous facts that will differ across customers, such as the prices charged to each customer, the prices charged by each of their upstream suppliers, supply cuts by each upstream supplier, the effect of each supply cut on the relevant spot market, and local spikes in demand due to the storm, all of which will affect each customer's alleged damages on a customer-by-customer basis. In addition to rendering the Nationwide Class non-ascertainable, these highly individualized questions of fact will defeat predominance. *See*, *e.g.*, *Braud v. Transp. Servs. of Illinois*, 2009 WL 2208524, at *13 (E.D. La. July 23, 2009) (denying class certification where individual issues of fact, causation, and damages precluded finding of predominance).

not propose any particular issues or subclasses, but even if they did, variations in state law would preclude certification of a nationwide issues class or subclass for the reasons discussed above. *See, e.g.*, *Colindres v. QuitFlex Mfg.*, 235 F.R.D. 347, 380-81 (S.D. Tex. 2006) ("A district court cannot manufacture predominance through the nimble use of subdivision (c)(4) . . . the interaction between subdivisions (b)(3) and (c)(4) is that a cause of action, as a whole, must satisfy the predominance requirement of (b)(3).").

### D.      Plaintiffs' Texas Class Allegations Should Be Dismissed Because The Texas Class Definition Suffers From The Same Fatal Flaw Of Vagueness

Plaintiffs' putative Texas Class suffers from the same vagueness problem as the Nationwide Class definition, as it is based on the inherently imprecise and subjective concept of "excessive and/or exorbitant prices." As discussed above, ascertaining membership in the Texas Class will involve numerous individualized inquiries for each customer – a process antithetical to the class action mechanism. The result will be "intensive, timely, costly, and inefficient individualized factual inquiries," ill-suited to class-wide resolution. *Jimenez*, 2012 WL 13055597, at *2; *see also DeBremaecker*, 433 F.2d at 734 (holding class made up of "residents of this State active in the peace movement" to be insufficiently ascertainable); *Yates*, 2018 WL 6303761, at *2 (determining class based on representing "other members of the buying public" to be insufficiently ascertainable); *Pfeffer*, 2012 WL 1910034, at *3 (holding proposed class insufficiently ascertainable where class definition would force court "to determine the nature of each consumer's account" separately).

### <u>CONCLUSION</u>

Symmetry respectfully requests that the Court dismiss Counts II, III, and IV of the Amended Complaint, and Count V to the extent it seeks declaratory relief, with prejudice. Symmetry also respectfully requests that the Court dismiss Plaintiffs' class allegations with

prejudice. Symmetry further respectfully requests any other such relief that the Court deems appropriate.

Dated: July 15, 2021                    Respectfully submitted,

                                        By: /s/Melissa R. Smith_____
                                        Melissa R. Smith
                                        State Bar No. 24001351
                                        GILLAM & SMITH, LLP
                                        303 South Washington Avenue
                                        Marshall, Texas 75670
                                        Telephone:  (903) 934-8450
                                        Facsimile:  (903) 934-9257
                                        Email:  melissa@gillamsmithlaw.com

                                        Nicholas J. Boyle (*pro hac vice*)
                                        Jessica N. Bratten (*pro hac vice*)
                                        LATHAM & WATKINS LLP
                                        555 Eleventh Street, NW
                                        Suite 1000
                                        Washington, D.C. 20004
                                        Tel.: (202) 637-2200
                                        Fax: (202) 637-2201
                                        nicholas.boyle@lw.com
                                        jessica.bratten@lw.com

                                        Johanna Spellman (*pro hac vice*)
                                        LATHAM & WATKINS LLP
                                        330 North Wabash Avenue, Suite 2800
                                        Chicago, Illinois 60611
                                        Tel.: (312) 876-7700
                                        Fax: (312) 993-9767
                                        johanna.spellman@lw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 15th day of July, 2021, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).


*/s/ Melissa R. Smith*
Melissa R. Smith